UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITAL BRIDGE CO., LTD,

                              Plaintiff,

         -v-

IVL TECHNOLOGIES LTD., MEMCORP INC.,
AND CRAIG ELECTRONICS INC.

                              Defendants.

Case No. 04-CV-4002 (KMK)

OPINION AND ORDER

Appearances:

Anthony H. Handal, Esq.
Brown Rudnick Berlack Israels, LLP
New York, New York
*Counsel for Plaintiff*

Brian L. Wamsley, Esq.
Goodwin Proctor, LLP
New York, New York
*Counsel for Plaintiff*

Daniel P. Burke, Esq.
Georgia Damoulakis, Esq.
Galgano & Burke, LLP
Hauppauge, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        By Opinion and Order of this Court dated August 30, 2006, Defendants IVL

Technologies ("IVL"), Memcorp, Inc. ("Memcorp"), and Craig Electronics, Inc. ("Craig")

(collectively "Defendants") were granted summary judgment dismissing Plaintiff Capital Bridge

Co.'s ("Capital Bridge") patent infringement claims. *See Capital Bridge Co. v. IVL Techs. Ltd.*,

No. 04-CV-4002, 2006 WL 2585529, at *1 (S.D.N.Y. Aug. 30, 2006). Defendants have filed

Motions for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, and

Defendant IVL has further filed a motion seeking (i) a determination that this case is exceptional

and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285, and (ii) sanctions under

28 U.S.C. § 1927 and the Court's inherent powers.  For the reasons stated herein, Defendants'

Motions are DENIED.

<u>I. Background</u>

<u>A.  Facts</u>

Plaintiff is the owner of U.S. Patent No. 6,025,553 (the "'553 patent"), entitled "Portable

Music Performance Device," which is a wireless, portable, hand-held karaoke device.  (Compl. ¶

8.)  The device allows users to select songs and musical accompaniment using a keypad on the

device and to wirelessly broadcast their voices and music to multiple FM receivers that are tuned

to the correct station.  *See* '553 Patent col.2. l.51-67, col.3 l.1-6 (mailed August 29, 1997).  In the

specification, Plaintiff explained that the device was created to overcome the disadvantages of

the typical karaoke system, including the bulkiness and cost of the equipment, the need for

wires, the inability to use the system in cars or outdoors, and the inability to have the

performance amplified by multiple receivers in different rooms.  *See id*. at col.1.15 - col.2 l.37.

Defendant IVL manufactures T.V. Star Player and Disney Princess Karaoke and sells

them to national retailers and international distributors.  (Decl. of Brian Gibson in Supp. of

Summ. J. ¶ 4 ("Gibson Decl.").)  Defendant Memcorp distributes the Disney Princess Karaoke

product to retailers.  (*Id*.)  Under license from IVL, Defendant Craig manufactures an industrial

design of T.V. Star Player, which is electronically identical to IVL's device and uses custom

component parts purchased from IVL.  (*Id*.)  These devices constitute the accused devices.

The '553 patent consists of forty claims, including independent claims 1 and 22, which were at issue in this case.  Claim 1 describes the Portable Music Performance Device as:  "a portable, self-contained hand-carried music performance device for *wirelessly transmitting* musical accompaniment information stored in a storage medium therein and a voice input from a user, for reception and reproduction by an external receiver and speaker unit."  '553 Patent col.10 l.27 (emphasis added).  Claim 22 describes the device as: "[a] portable, hand-carried music performance device capable of *transmitting wirelessly* both musical accompaniment information stored therein in a storage medium and reproduction by an external speaker unit." *Id.* at col.13 l.6 (emphasis added).  Though the dependent claims in the '553 patent do not use the term "wirelessly," multiple claims refer to transmission through an antenna.

The application process for the '553 patent required multiple amendments to achieve patentability.  The U.S. Patent and Trademark Office ("PTO") granted Plaintiff a patent only after Plaintiff amended its application so as to emphasize the device's wireless transmission capabilities.  Prior to granting the application, the PTO expressed concern regarding the prior art established by the Takao patent, U.S. Patent No. 5,349,480, and the Mankovitz patent, U.S. Patent No. 5,408,686.  The Takao patent taught a portable music performance device but did not disclose the transmission means.  (Decl. of Georgia Damoulakis in Supp. of Summ. J. Ex. B at 332 ("Damoulakis Decl.").)  The PTO examiner believed that when Takao was combined with Mankovitz, which teaches a means for transmitting human voice and musical accompaniment, a person of ordinary skill could achieve Plaintiff's invention.  (*Id*. Ex. B at 333.)  In response to the PTO's rejection, Plaintiff first amended the claims to add "elements, other than a transmitting means," that Plaintiff believed were not taught or suggested by Takao.  (*Id*. Ex. B at 356.)  In the first amendment, Plaintiff added details to claim 1 so that where the claim once

referred to "a portable music performance device," the claim was changed to "a portable, self-contained hand-carried music performance device."  At this time there were only 21 patent claims.

The first amendment was rejected on the same grounds as the original application, and the PTO again referred to additional patents that presented prior art issues.  (*Id*. Ex. B at 361.) Plaintiff then filed a second amendment explaining in the remarks that the claims were amended and new claims were added "to more clearly set forth that which [Plaintiff] regards as the invention" and "to more clearly and thoroughly define the subject matter."  (*Id*. Ex. B at 395.)  It was in this August 29, 1997 amendment that the opening clause of claim 1 was finally amended to include the wireless transmitting capabilities, reading "[a] portable, self-contained hand-carried music performance device for wirelessly transmitting . . . ."  (*Id*. Ex. B at 386.)  The final clause of claim 1 was also amended to read, a "transmitter disposed in said casing for wirelessly transmitting" instead of just a "means for transmitting."  (*Id*. Ex. B at 387.)  Similarly, claim 22 was added to the patent application, which also refers to a device capable of transmitting wirelessly.  (*Id*. Ex. B at 389.)  The August 29, 1997 amendment was made following an unrecorded conversation that took place sometime in or around June 1997 between Plaintiff and the PTO, leaving possible the inference that the addition of "wireless" was a result of those conversations.  (*Id*. Ex. B at 395.)

Plaintiff requested amendments to the '553 patent that would remove the term "wirelessly" from claim 1.  However, the PTO had rejected early amendments and the latest application for amendment was pending with the PTO at the time summary judgment was granted to Defendants.  Defendants' accused devices also serve as hand-held karaoke devices, however the devices do not use wireless transmission.  (Gibson Decl. ¶ 9.)  In order to operate,

the devices are connected by wires to a television.  (*Id.* ¶ 5.)  Also, the devices only send signals

to a single receiver.  (*Id.* ¶ 11.)

B.  Procedural History

On May 6, 2004, Capital Bridge, through its attorney, Brian L. Wamsley, sent IVL a

cease and desist letter asserting that IVL's karaoke products infringed the claims secured by

Capital Bridge's '553 patent.  (Decl. Of Daniel P. Burke Ex. K ("Burke Decl.").)  Rather than

send this letter directly to IVL, Capital Bridge directed the letter to one of IVL's retail partners,

who then forwarded it on to IVL.  (Def. IVL's Mot. For a Determination that this Case is

Exceptional and for an Award of IVL's Reasonable Attorneys' Fees Under 28 U.S.C. § 285; and

for Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Powers 3 ("IVL's Mot. For

Sanctions").)  By letter dated May 13, 2004, IVL's Chief Technology Officer, Brian Gibson,

responded that the products cited in Capital Bridge's cease and desist letter did not violate the

'553 patent because they did not employ a RF signal transmission to a receiver.  (*Id.*)

Specifically, IVL asserted that the allegedly infringing products had to be connected directly to a

television through an audio/visual ("A/V") cable in contrast to Capital Bridge's '553 patent,

which employs a wireless signal for transmission.  (*Id.*)  Capital Bridge made no further attempts

to communicate with IVL.  Instead, on May 26, 2004, Capital Bridge filed the Complaint in this

case alleging infringement of the '553 patent.  (Burke Decl. Ex. M.)

On August 25, 2004, prior to being served the Complaint but after it had been filed, IVL

once again contacted Capital Bridge by letter, setting forth detailed reasons why IVL's products

did not infringe the '553 patent.  (IVL's Mot. For Sanctions 3.)  In addition to reasserting that the

'553 patent was expressly limited to wireless transmission, IVL noted that Capital Bridge had,

by its own admission, explicitly relinquished any claim to wired transmission in its patent reissue

application for the '553 patent.[1]  (Burke Decl. Ex. N.)  IVL enclosed in the same letter publicly

available product literature that demonstrated the alleged infringing products employed an A/V

cable for wired transmission of data and, thus, were not wireless.  (*Id.*)

On December 17, 2004, Defendants served upon Capital Bridge a motion seeking

sanctions against Plaintiff in the form of dismissal of the action, a penalty payable to the Court,

and an order directing Plaintiff to pay Defendants' reasonable attorneys' fees and expenses.

(Defs.' Mot. for Sanctions Due to Pl.'s Failure to Comply with Federal Rules of Civil Procedure

Rule 11 in Connection with the Filing of the Compl. 2 ("Defs.' Mot. For Sanctions").)

Defendants argued that Capital Bridge's Complaint violated Fed. R. Civ. P. 11(b)(1), (2) and (3)

because at the time it was filed the claims and allegations "were frivolous under existing law,

lacked evidentiary support to establish a claim of patent infringement, and had not been formed

after an inquiry which was reasonable under the circumstances."  (*Id* at 12.)

By letter dated January 6, 2005, Defendants requested a pre-motion conference seeking

permission to file a Motion for Summary Judgment pursuant to Rule 56 and a Motion for

---

[1] Capital Bridge filed a reissue application for the '553 patent with the PTO on February 15, 2002, seeking to broaden the scope of the claims covered by the original patent by removing the "wirelessly" limitation.  (IVL's Mot. For Sanctions 9.)  In support of its patent reissue application, Capital Bridge filed a declaration indicating that its patent "did not claim that transmission could be by wire as well as a wireless transmission."  (Burke Decl. Ex. I.)  The PTO rejected Capital Bridge's reissue application stating:

> The application attempts to recapture subject matter from the original
> application.  The subject matter of "wirelessly transmitting" was deliberately
> added to overcome a rejection in the original application (paper #20,
> preliminary amendment D).  Prior to this amendment which put the original
> application in condition for allowance, the claims in the original application,
> did not recite a limitation of "wirelessly transmitting."  Reissue applications
> are not permitted to recapture [subject matter] [sic] deliberately cancelled in
> the original application.

(Burke Decl. Ex. J.)

Sanctions and Attorneys' Fees pursuant to Rule 11.  (Damoulakis Decl. Ex. B.)  In response to a Court Order scheduling a status conference for February 1, 2005, Plaintiff and Defendants exchanged and filed a joint discovery plan.  Capital Bridge opposed Defendants' proposed Motions for Summary Judgment and Sanctions and argued that discovery should be completed before any such motions were filed.  (*Id*. Ex. C.)  At the February 1 status conference, the Court ordered Capital Bridge to submit a letter to the Court detailing the scope of its desired discovery and granted Defendants the opportunity to respond.  *Capital Bridge Co. v. IVL Techs. Ltd.*, No. 04-CV-4002 (S.D.N.Y. Feb. 1, 2005) (order instructing Parties to brief the scope of their required discovery).

By letter dated February 8, 2005, Capital Bridge requested extensive discovery including drawings, specifications, photographs, tooling implements, molds, dies, internal memoranda, and expert witness discovery, arguing that such were needed to properly defend against Defendants' impending Summary Judgment Motion.  (Damoulakis Decl. Ex. D.)  In the same letter, Capital Bridge noted that, "in a laboratory in Korea," Capital Bridge had "preliminarily tested what is believed to be devices imported, manufactured, used, sold, and/or offered for sale by defendants."  (*Id*.)  Regardless, Capital Bridge maintained that extensive discovery was needed to confirm the findings of its preliminary tests and, curiously, to "compel defendants to produce their various devices for inspection."  (*Id*.)  In their response letter dated February 15, 2005, Defendants unsurprisingly argued that Capital Bridge's discovery request was over-broad and that its request for devices for inspection was suspect given that the allegedly infringing devices were widely available for purchase by Plaintiff at a cost of less than $100 prior to instituting the patent infringement suit.  (*Id*. Ex. E.)  In spite of this fact, IVL offered to provide Capital Bridge

with samples of the allegedly infringing Karaoke devices, as well as the relevant electrical schematics and data sheets relating to their electrical design.  (*Id*.)

At oral argument on August 2, 2005, Plaintiff's counsel relayed to the Court that Capital Bridge's patent reissue application pending before the PTO had been rejected, and, consequently, the action pending against Defendants could not be pursued based on a theory of literal infringement.  (*Id*. Ex. H at 3.)  Instead, Plaintiff's counsel argued that Plaintiff's infringement claim was now based on the doctrine of equivalents, pursuant to which Plaintiff equated the wired transmission of Defendants' devices with the wireless transmission claimed by the '553 patent.  (*Id*. Ex. H at 8.)  However, when Plaintiff's counsel was pressed by the Court as to how Defendants' wired devices could possibly infringe the "wirelessly transmitting" limitation of the '553 patent, Plaintiff's counsel argued that further discovery was needed before a position could be taken.  (*Id*. Ex. H at 9-12.)  Defendants' counsel objected to Plaintiff's further discovery requests on the ground that Plaintiff was required to conduct a reasonable inquiry as to the nature of the alleged infringement by comparing the accused device with claims of the patent *prior* to filing its Complaint.  (*Id*. Ex. H at 6, 10.)  Although Plaintiff's counsel argued that a reasonable inquiry comparing the allegedly infringing devices was conducted, counsel nonetheless could not identify which devices were tested, how many, or the nature of the inquiry.  (*Id*. Ex. H at 11-12.)

Following oral argument on August 2, 2005, the Court ordered Defendants to produce limited discovery and Plaintiff to turn over any reports related to any tests or examinations that it or its agents conducted with respect to Defendants' devices.  (IVL's Mot. For Sanctions 5-6.)  Additionally, Capital Bridge was ordered to submit a brief letter advising the Court whether any additional discovery was required and to lay out its position on how Defendants' products

8

infringe the '553 patent, as Plaintiff's counsel was unable to articulate its position on the nature of Defendants' alleged infringement at the August 2 conference.  (*Id*. at 6.)  In response to the Court's Order, Defendants produced the accused devices and schematics relating to their electrical design.  In response to the same Order, Capital Bridge produced a single forty-four page technical report drafted by Mr. Sang Mock Lee, inventor of the '553 patent, in which he applied Korean patent law and concluded that the IVL device infringed sixty of the sixty-one elements of claim 1 of the '553 patent.  (Damoulakis Decl. Ex. J.)  Of note, the technical report, which purportedly was the basis for Capital Bridge filing its infringement suit, explicitly states that the "wirelessly transmitting" limitation of the '553 patent was not infringed by Defendants' devices.  (*Id.* Ex. J and Ex. H at 10-13.)

At a conference held on September 15, 2005, Capital Bridge indicated that it had conducted no further inspection of Defendants' devices other than the previously-disclosed Korean technical report, despite the fact that the Court's previous Order required production of the allegedly infringing devices and their electrical schematics.  (*Id.* Ex. A at 12.)  Instead, Plaintiff's counsel asserted that the discovery turned over by Defendants was insufficient to perform the necessary equivalents analysis.  This position, however, was undermined by Plaintiff's discovery correspondence with Defendants in which Defendants explicitly offered to provide Plaintiff with any additional documents believed to be responsive to the Court's August 2 Order.  (*Id.* Ex. I.)  Plaintiff chose not to avail itself of Defendants' offer, but instead decided to appear before the Court and once again argue that further discovery was needed.  The Court rejected Plaintiff's request and set a briefing schedule for Defendants' Motion for Summary Judgment.  (*Id.* Ex. A at 17-18.)

Following August 8, 2006 oral arguments, the Court issued an Opinion and Order on August 30, 2006 granting Defendants' Motion for Summary Judgment. *See Capital Bridge*, 2006 WL 2585529, at *1. That Opinion and Order was summarily affirmed by the Federal Circuit on August 10, 2007. *See Capital Bridge Co. v. IVL Techs. Ltd.*, 232 F.App'x. 987 (Fed. Cir. 2007).

II. Discussion

A. Claim Pursuant to 35 U.S.C. § 285

1. Standard of Review

Title 35, United States Code, Section 285 provides "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The determination of whether to award attorneys' fees under Section 285 is a two-step process. First, the court must determine whether a case is exceptional, a factual determination to be established by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). Second, if the court determines that a case is exceptional, the court must then decide whether the award of attorneys' fees is appropriate. *See id.* at 1328. However, even in cases where there is clear and convincing evidence of exceptional conduct under Section 285, the award of attorneys' fees is not mandatory. *See S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) ("Even an exceptional case does not require in all circumstances the award of attorney fees."). Rather, the finding that a case is exceptional simply frees the Court to exercise its discretion. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("Even for an exceptional case, the decision to award attorney fees and the amount thereof are within the district court's sound discretion.").

10

"'The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'"   *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (quoting *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)); *see also Brooks Furniture*, 393 F.3d at 1381 ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions.").  "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture*, 393 F.3d at 1381.

When determining whether a case is exceptional, the reasonableness of the patentee in assessing infringement is a proper consideration for Section 285 purposes.  *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).  When "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Id*.  Moreover, "[a] party confronted with the difficulty of proving what is in an adversary's mind must be at liberty to prove facts establishing that that adversary should have known, i.e. to prove facts that render the 'I didn't know' excuse unacceptable." *Id*. at 810.  Accordingly, the Federal Circuit has held that "[a] frivolous infringement suit is one which the patentee knew or, on reasonable investigation should have known, was baseless."  *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993).

When a patent holder asserts infringement of a valid patent, the law grants such an assertion a presumption of good faith, which can only be overcome by clear and convincing evidence of bad faith.  *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003).

### 2.  Analysis

Defendant IVL contends that this case is exceptional under Section 285, and as such an award of its attorneys' fees is appropriate.  IVL argues that the Complaint, both as filed and throughout the time it was maintained, was frivolous because Capital Bridge knew, or on reasonable investigation should have known, that the claims secured by the '553 patent could not successfully be asserted against Defendants' products.  (IVL's Mot. For Sanctions 10.)  In support of this contention, IVL maintains that Capital Bridge failed to satisfy its obligation to conduct an adequate pre-filing infringement analysis before commencing its suit, and that Capital Bridge's continued prosecution of its infringement claim based on the doctrine of equivalents was "absurd and baseless."  (*Id.* at 11.)

As IVL bluntly puts it, "[e]ven a cursory comparison of the accused devices with the claims of the '553 patent would have revealed that the accused hard wired devices could never meet the 'wirelessly transmitting' limitation of claims and that the accused devices could never be characterized as substantial equivalents."  (*Id.* at 10-11.)  As such, the Court's inquiry will focus on the reasonableness of Capital Bridge's pre-filing assessment of infringement and the reasonableness of its continued prosecution of the lawsuit under the doctrine of equivalents.

IVL bases its allegations that Capital Bridge failed to conduct a reasonable pre-filing assessment on the fact that the technical report written by Mr. Sang Mock Lee, in which he applied Korean patent law to compare the claims of the '553 patent against Defendants'

12

allegedly infringing devices, constituted the entirety of Capital Bridge's pre-filing inquiry. While the Court would be inclined to agree with Defendant that such an inquiry alone would be insufficient to satisfy Plaintiff's duty, the Court is not as willing as Defendant to disregard the Declaration of Brian L. Wamsley as a complete fabrication.[2]  Taking into account the Wamsley Declaration, in which Mr. Wamsley recounts in substantial detail his pre-filing inquiry and good-faith basis for bringing the suit, Plaintiff establishes, albeit just barely, that it conducted a sufficient pre-filing investigation.

First, Mr. Wamsley, as counsel for the inventor of the '553 patent and its assignee, Capital Bridge, was intimately familiar with the prosecution history of the '553 patent before the PTO and the patent's claims, and as such had first-hand knowledge to evaluate any alleged infringement of the '553 patent.  (Decl. in Opp'n to Defs.' Mot. For Rule 11 Sanctions and Other Relief 2-3 ("Wamsley Decl.").)  Mr. Wamsley asserts that Mr. Russell W. Binns, Jr., Esq., a fellow patent attorney with an electrical engineering degree, conducted an infringement analysis on the allegedly infringing devices.  (*Id.* at 7.)  According to Mr. Wamsley, "Mr. Binns concluded that [there] was a good faith factual and legal basis for bringing the action."  (*Id.*)  With respect to the "wirelessly transmitting" limitation of the '553 patent, Mr. Wamsley maintains that he explicitly asked Mr. Binns whether the wired transmission of Defendants' devices would "be a problem."  (*Id.*)  According to Mr. Wamsley, Mr. Binns responded that the "wirelessly transmitting" limitation referred to a transmitter "capable of wireless RF signal transmission," and that such "RF signal transmission could also be through a wire and that would be an equivalent to wireless transmission."  (*Id.*)  This reasoning is presumably also the

---

[2]Defendants argue that Mr. Wamsley's Declaration is suspect and should not be credited. However, the Court is not convinced, as Defendants have not provided enough specific reasons to challenge the veracity of Mr. Wamsley, an officer of the Court, let alone to justify a hearing on the matter.

source for Plaintiff's contention throughout the infringement suit that the wired transmission of Defendants' devices was equivalent to the wireless limitation of Plaintiff's patent.

Although the Court shares Defendant's skepticism regarding the thoroughness of Mr. Wamsley's purported pre-filing inquiry – especially in light of Mr. Wamsley's inability to articulate a cognizable infringement theory at the August 2, 2005 conference, as well as the explicit finding in the Korean technical report that the "wirelessly transmitting" limitation of the '553 patent was not infringed by Defendants' devices – it must be given considerable deference as a patentee asserting infringement is entitled to a presumption of good faith. *See Springs Window Fashions*, 323 F.3d at 999. Thus, accepting the veracity of Mr. Wamsley's Declaration, the Court cannot conclude that the claim was frivolous as filed or that Plaintiff knew or should have known, following a reasonable investigation, that the claim was baseless.

Furthermore, while the Court continues to view as "absurd" Plaintiff's contention that the wired transmission of Defendants' devices is functionally equivalent to the wireless transmission claimed by the '553 patent, (*See Capital Bridge*, 2006 WL 2585529, at *11), and while the Federal Circuit's summary affirmance of summary judgment for Defendants is significant, the Court cannot conclude that Capital Bridge's decision to continue its infringement action following the limited discovery granted by the Court was the result of anything other than poor legal judgment. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999) (stating that with "no evidence to suggest that [the losing party] had utterly no basis for [its] subjective belief in the merits of [its] case[,]" "[the court] cannot conclude that the continuation of [the losing party's] action was anything more than the result of poor legal judgment"). Additionally, IVL has failed to establish by clear and convincing evidence that the infringement action was pursued in bad faith or for any improper purpose. Although it may be argued that

14

Plaintiff's Complaint was objectively frivolous, IVL has not rebutted by clear and convincing evidence the presumption of good faith entitled to Plaintiff and has not met its burden of demonstrating subjective bad faith.

Because Defendant has not satisfied the first requirement for finding a case exceptional pursuant to 35 U.S.C. § 285, the Court will not consider whether the litigation was objectively baseless. *See Brooks Furniture*, 393 F.3d at 1381.

B.  Claim Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power

1.  Standard of Review

IVL also seeks attorneys' fees pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.  Section 1927 provides that "[a]ny attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Section 1927 authorizes the imposition of sanctions when 'there is a clear showing of bad faith on the part of an attorney.'"  *Schlaifer Nance & Co.*, 194 F.3d at 336 (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute.").  As the Second Circuit has repeatedly held, a finding of bad faith is appropriate for Section 1927 purposes only where an attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Schlaifer Nance & Co*, 194 F.3d at 336 (internal quotation marks omitted).

Similarly, a court is vested with the inherent power to impose sanctions on any party appearing before it, an authority which derives from a court's need to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*,

15

501 U.S. 32, 43 (1991).  A court may also sanction where a party "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)).  Indeed, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Schlaifer Nance & Co*, 194 F.3d at 336 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)) (alteration in original).

In order to impose sanctions under either Section 1927 or its inherent power, a court must find, by clear and convincing evidence, that: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  *Schlaifer Nance & Co*, 194 F.3d at 336.  A claim is said to be without a colorable basis when it is completely devoid of any factual or legal basis.  *Id.* at 337. Conversely, "[a] claim is colorable 'when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'"  *Revson*, 221 F.3d at 78-79 (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam)).  Generally, in assessing whether sanctions are appropriate either pursuant to a court's inherent power or Section 1927, a court will look to whether a reasonable attorney or party "could have concluded that facts supporting the claim might be established, not whether such facts actually had been established."  *See Nemeroff*, 620 F.2d at 348.  A claim that fails as a matter of law, as it did in the underlying matter in this case, does not necessarily lack a colorable basis based solely on that fact alone.  *See Schlaifer Nance & Co*, 194 F.3d at 337.  "Accordingly, judgment as a matter of

law against a claim is a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis." *Id.*

### 2. Analysis

In support of its application for sanctions pursuant to Section 1927 and the Court's inherent powers, IVL argues that Capital Bridge repeatedly delayed the resolution of the infringement action in bad faith. More specifically, IVL points to Plaintiff's attempt to adjourn the Court's adjudication of Defendants' Motion for Summary Judgment based on the PTO's issuance of a Notice of Allowability in Plaintiff's ongoing patent reissue application. (*See* Damoulakis Decl. Ex. K, L and M; IVL's Mot. For Sanctions 17-18.) IVL asserts that Capital Bridge's argument that Defendant's Motion for Summary Judgment be denied without prejudice during the pendency of Capital Bridge's patent reissue application was "in clear contradiction of well settled case law that any newly reissued claims be applied retroactively" (IVL's Mot. For Sanctions 17), and that such conduct evidenced the necessary showing of bad faith required for an award of sanctions pursuant to Section 1927.

As noted above, a finding of bad faith is appropriate only where an attorney's actions are so devoid of merit that it can only be concluded that they were undertaken for some improper purpose. *See Schlaifer Nance & Co*, 194 F.3d at 336. Although the Court was ultimately unpersuaded by Plaintiff's claim that Defendants' Motion for Summary Judgment should be denied based on the PTO's issuance of a Notice of Allowability, this alone does not suggest that it was manifestly unreasonable, and certainly does not constitute a clear and convincing showing of bad faith.

Additionally, IVL contends that Plaintiff's responses to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 were false and unresponsive, evidencing clear bad

faith.  (IVL's Mot. For Sanctions 19.)  While the Court agrees with Defendants that Plaintiff's responses were insufficient given that they were made after receiving discovery and that they were inconsistent with Plaintiff's counsel's representations to the Court during the August 2, 2005 conference, there is no clear evidence to suggest that Plaintiff's actions were the result of anything other than a lack of diligent legal work and/or confused thinking.  Consequently, absent a clear showing of bad faith or that Plaintiff's actions were undertaken for an improper purpose, Defendant IVL's Motion for Sanctions pursuant to Section 1927 must be denied.  For the same reasons, the Court likewise declines to sanction Plaintiff pursuant to its inherent powers.

C.  Rule 11 Sanctions

1.  Standard of Review

Finally, Defendants claim that Capital Bridge, by filing and maintaining its Complaint, violated Rule 11(b) of the Federal Rules of Civil Procedure.[3]  The Second Circuit has held that "the standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is

---

[3]Rule 11(b) provides in pertinent part, that an attorney or a party submitting a signed pleading, written motion, or other paper to the Court:

> is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) ("Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." (internal quotation marks omitted)).  As with sanctions awarded pursuant to 35 U.S.C. § 285, even if a court has concluded that Rule 11(b) has been violated, an award of sanctions is not mandatory.  At its discretion, a court may impose sanctions, monetary or otherwise, "'sufficient to deter repetition of such conduct.'"  *Id*. at 65 (quoting Fed. R. Civ. P. 11(c)(2)).

Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for the claim, and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous.  Fed. R. Civ. P. 11(b).  "In the context of patent infringement actions, [the Federal Circuit has] interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

### 2. Analysis

Because the Court has concluded that Capital Bridge appears to have undertaken a minimally reasonable pre-filing infringement inquiry in light of the Wamsley Declaration, *see supra* II(A)(2), and in accordance with the Federal Circuit's reasonable inquiry requirement as laid out in *Q-Pharma*, the Court declines to impose sanctions pursuant to Rule 11.  Though this case was not a close call, counsel's conduct did not sink to the sanctionable.

### III.  Conclusion

For the reasons stated herein, Defendants' Motions are DENIED.[4]  The Clerk is directed to terminate the Motions (Doc. # 49, 51 and 60).

SO ORDERED.

Dated:      October **26**, 2007
             White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[4]Defendant IVL filed a Motion to Strike Exhibit F of the Wamsley Declaration and all references thereto.  The Court denies IVL's Motion to Strike as moot because the exclusion of this material would not change or otherwise affect the outcome here.

20

<u>Service List</u>:

Anthony H. Handal, Esq.
Brown Rudnick Berlack Israels, LLP
Seven Times Square
New York, New York 10036

Brian L. Wamsley, Esq.
Goodwin Proctor, LLP
599 Lexington Avenue
New York, New York 10022

Daniel P. Burke, Esq.
Georgia Damoulakis, Esq.
300 Rabro Drive, Suite 135
Hauppauge, New York 11788